WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

Susan Gross,

    Plaintiff,

v.

Commissioner of Social Security Administration,

    Defendant.

No. CV-16-08223-PCT-GMS

**ORDER**

Pending before the Court is Plaintiff Susan Gross's appeal of the Social Security Administration's decision to deny disability benefits. (Doc. 1). For the reasons set forth below, this Court affirms the decision.

## BACKGROUND

On January 5, 2012, Ms. Gross filed an application for disability insurance benefits, claiming onset of disability from November 28, 2011. (Tr. 16). She claimed disability due to degeneration of the lumbar disc and cervical spine, depression, anxiety, and arthritis. (Tr. 189). The Social Security Administration denied the claim on July 5, 2012 and on reconsideration on May 30, 2013. (Tr. 16). Ms. Gross requested a hearing with an Administrative Law Judge ("ALJ") and testified before ALJ Earl Cates on April 8, 2014 and January 13, 2015. (Tr. 16).

The ALJ undertook the five-step sequential evaluation to determine Ms. Gross's claim of disability[1] and concluded that she was not disabled under governing law. (Tr.

---

[1] The five-step sequential evaluation of disability is set out in 20 C.F.R. § 04.1520 (governing disability insurance benefits) and 20 C.F.R. § 416.920 (governing

13–37). At step one, the ALJ found that Ms. Gross has not engaged in substantial gainful activity since November 28, 2011. (Tr. 18). At step two, the ALJ concluded that Ms. Gross did not suffer from medically determinable mental impairments of cognitive disorder, depression, and anxiety, but that she did suffer from degenerative disc disease of the lumbar spine, from associated lumbago and paresthesias, and from degenerative disc disease of the cervical spine. (Tr. 18–19). At step three, the ALJ determined that none of the impairments met or equaled one of the Social Security Administration's listed impairments for benefits. (Tr. 22).

Next, at step four, the ALJ determined Ms. Gross's residual function capacity ("RFC").[2] He concluded that she could perform medium work as defined in 20 C.F.R. 404.1567(c), except that she could frequently lift or carry 11–20 pounds and occasionally lift or carry 21–50 pounds. (Tr. 22). The ALJ also concluded that Ms. Gross is capable of working in her previous positions as a real estate sales agent, medical secretary, nurse assistant, and cardiac monitor technician. (Tr. 28).

In his review, the ALJ discredited Ms. Gross's treating physicians and relied on the opinions of other examining physicians. (Tr. 22–28). He also discredited Ms.

---

supplemental security income). Under the test:

> A claimant must be found disabled if she proves: (1) that she is not presently engaged in a substantial gainful activity[,] (2) that her disability is severe, and (3) that her impairment meets or equals one of the specific impairments described in the regulations. If the impairment does not meet or equal one of the specific impairments described in the regulations, the claimant can still establish a prima facie case of disability by proving at step four that in addition to the first two requirements, she is not able to perform any work that she has done in the past. Once the claimant establishes a prima facie case, the burden of proof shifts to the agency at step five to demonstrate that the claimant can perform a significant number of other jobs in the national economy. This step-five determination is made on the basis of four factors: the claimant's residual functional capacity, age, work experience and education.

*Hoopai v. Astrue*, 499 F.3d 1071, 1074–75 (9th Cir. 2007) (internal quotation marks and citations omitted).

[2] RFC is the most a claimant can do despite the limitations caused by his impairments. *See* S.S.R. 96–8p (July 2, 1996).

Gross's subjective testimony about the severity of her symptoms. (Tr. 22–28).

Ms. Gross sought review from the Appeals Council, but the Appeals Council declined to review the ALJ's decision. (Tr. 2). Ms. Gross subsequently filed this appeal.

**DISCUSSION**

**I.   Standard of Review**

A reviewing federal court will only address the issues raised by the claimant in the appeal from the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). A federal court may set aside a denial of disability benefits only if that denial is either unsupported by substantial evidence or based on legal error. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). Substantial evidence is "more than a scintilla but less than a preponderance." *Id.* (quotation omitted). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Id.* (quotation omitted).

The ALJ is responsible for resolving conflicts in testimony, determining credibility, and resolving ambiguities. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). "When the evidence before the ALJ is subject to more than one rational interpretation, we must defer to the ALJ's conclusion." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004). This is so because "[t]he [ALJ] and not the reviewing court must resolve conflicts in evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) (citations omitted). However, the Court "must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (quoting *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989)). Nor may the Court "affirm the ALJ's . . . decision based on evidence that the ALJ did not discuss." *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003).

**II.  Analysis**

Ms. Gross argues the ALJ erred when he (A) rejected the medical opinions of

treating physicians; (B) afforded weight to the medical opinions of non-treating physicians; and (C) discredited Ms. Gross's subjective testimony. (Doc. 17).

### A. The ALJ Justifiably Discredited Ms. Gross's Treating Physicians

An ALJ must give a treating physician's medical opinion controlling weight concerning a claimant's impairment "if that opinion is well-supported and not inconsistent with the other substantial evidence in the case record." *Edlund v. Massanari*, 253 F.3d 1152, 1157 (9th Cir. 2001), *as amended on reh'g* (Aug. 9, 2001); *see Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995), *as amended* (Apr. 9, 1996) ("As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant."). However, an "ALJ need not accept a treating physician's opinion which is 'brief and conclusionary in form with little in the way of clinical findings to support [its] conclusion.'" *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Young v. Heckler,* 803 F.2d 963, 968 (9th Cir.1986)).

If the treating physician's opinion is contradicted by another doctor, an ALJ can reject the treating physician's opinion only if she provides "specific and legitimate reasons supported by substantial evidence in the record." *Lester*, 81 F.3d at 831 (internal quotations omitted). "Sheer disbelief is no substitute for substantial evidence," and thus, an ALJ must specify which evidence supports the decision to reject the treating physician's opinion. *Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004). An ALJ may cite to diagnostic test results, contrary reports from examining physicians, and conflicting testimony from the claimant to reject the opinion of a treating physician. *Benecke*, 379 F.3d at 594.

#### 1. Dr. Purush

The ALJ rejected Dr. Purush's medical opinion because he started treating Ms. Gross one year after the alleged onset date; the opinion was inconsistent with her history and objective medical evidence; and the opinion was inconsistent with her improvement from medical treatment. (Tr. 28).

When a treating physician first examines a patient after the alleged onset date, an

ALJ may reject the retrospective assessment if the opinion is conclusory and does not consider the previous, relevant medical history. *Johnson v. Shalala*, 60 F.3d 1428, 1432–33 (9th Cir. 1995).

Dr. Purush first met with Ms. Gross on November 27, 2012, (Tr. 1231), one year after the alleged onset date, and he completed a physical capacities evaluation more than two years later on January 7, 2015. (Tr. 2275–76). At the 2012 appointment, Dr. Purush reviewed Ms. Gross's medical records and only instructed her to continue current medications, exercise, and not do any heavy lifting. (Tr. 1234). He conducted the 2015 evaluation telephonically and relied on "advanced cerebral atrophy, abnormal EKG, abnormal vision, lumbar degeneration, and early onset dementia" to reach his conclusion that Ms. Gross was disabled. (Tr. 2276). Because the evaluation conflicts with his initial appointment, does not reference medical evidence prior to their first appointment, and is otherwise conclusory, the ALJ reasonably discredited Dr. Purush's later medical opinion.

An ALJ may reject a treating physician's opinion because it is inconsistent with objective medical evidence. Because of back pain, Ms. Gross visited the emergency room on November 28, 2011, the alleged onset date of disability. (Tr. 426). The doctor ordered x-rays and noted that they showed "no significant fracture or abnormality." (Tr. 427). The doctor noted that Ms. Gross "has a normal mental status" and "has no anxiety, depression or agitation." (Tr. 427). Lastly, the doctor prescribed no work for two days. (Tr. 427). A follow-up MRI confirmed that Ms. Gross suffered from pronounced degenerative disc changes, but the physician did not recommend surgery considering her young age and "overall lack of severe degeneration." (Tr. 409).

Then, Ms. Gross met with Dr. Purush six times during 2013, and he repeatedly prescribed continued use of medications, exercise, and no heavy lifting. (Tr. 1231–76). Dr. Purush ordered a second MRI in May 2013 which noted "mild multilevel degenerative disc disease" with only minimal deviations. (Tr. 1280). Considering the objective medical evidence, the ALJ reasonably discredited Dr. Purush's opinion on this issue.

An ALJ may consider medical improvement to reject a physician's later claim of disability. *See e.g., Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (holding that an ALJ provided adequate reasons to discredit a doctor's claim of disability when the doctor previously stated that the claimant was not disabled and had improved since her original examination). An ALJ may not, however, selectively refer to some medical improvement to reject a medical opinion when other evidence indicates that the claimant is disabled, notwithstanding any improvement. *Holohan v. Massanari*, 246 F.3d 1195, 1207–08 (9th Cir. 2001).

Ms. Gross regularly attended physical therapy after her emergency room visit and alleged onset of disability. At the original appointment, the physical therapist reported that Ms. Gross was severely limited to participate in sports, vacuum, and carry groceries, and that she was moderately limited to bend, stoop, get out of a chair, and lift groceries. (Tr. 498). One month later, the therapist noted slow, steady progress, improved lumbar stability, and decreases in overall pain. (Tr. 521). Ms. Gross reported encouragement that therapy will continue to help. (Tr. 519). Three months later, the therapist noted that Ms. Gross had improved to be moderately limited to vacuum, bend, stoop, lift and carry groceries, and mildly limited to get out of a chair. (Tr. 535). Two years later, Ms. Gross had an appointment with a separate physical therapist who recorded her ability to walk, stand, balance, dress, and drive as mildly limited. (Tr. 1027).

In her brief, Ms. Gross presented a separate interpretation of the record and argued that treatment did not remedy her pain. Despite alternative interpretations, the ALJ provided adequate support for his reasonable interpretation that Ms. Gross improved from treatment. From the alleged onset date of disability, and contrary to a claim of total disability, physical therapists noted that Ms. Gross was moderately limited to bend, stoop, and get out of a chair. She subsequently showed some signs of improvement. Therefore, the ALJ justifiably discredited Dr. Purush's opinion that Ms. Gross was disabled from the alleged onset date.

### 2. Dr. El-Harakeh

Dr. El-Harakeh is another treating physician of Ms. Gross. Dr. El-Harakeh opined that Ms. Gross could frequently lift and carry up to five pounds and occasionally bend, squat, crawl, climb, and reach. (Tr. 2317). The ALJ gave the opinion little weight because Dr. El-Harakeh did not treat Ms. Gross until well after the alleged onset of disability, and he treated her for respiratory problems. (Tr. 28).

Ms. Gross did not argue against this determination. She concluded that Dr. El-Harakeh failed to cite clinical findings in support of his opinion, and the ALJ did not err in this regard. (Doc. 24 at 7).

### 3. Dr. Bennett

Dr. Bennett treated Ms. Gross as her chiropractor. He opined that Ms. Gross could occasionally lift and carry up to ten pounds and occasionally bend, squat, crawl, and climb. (Tr. 2272). The ALJ gave the opinion little weight because it was inconsistent with mild clinical findings and improvement from treatment. (Tr. 28).

A chiropractor is not listed as an acceptable medical source in the Federal Regulations, and an ALJ therefore gives chiropractic opinions less weight than an opinion from an acceptable medical source. *See* 20 C.F.R. §§ 404.1502, 404.1513; SSR 06–3p ("The fact that a medical opinion is from an 'acceptable medical source' is a factor that may justify giving that opinion greater weight than an opinion from a medical source who is not an 'acceptable medical source' because ... 'acceptable medical sources' 'are the most qualified health care professionals'"). Further, as discussed above, the ALJ reasonably discredited a medical opinion based on inconsistency with mild clinical findings and improvement from treatment. *Supra* at II.A.1 Therefore, the ALJ did not err to give Dr. Bennett's opinion little weight

### 4. Dr. Lemberg and Dr. Nguyen

Sally Lemberg, a licensed clinical social worker, offered an opinion that Ms. Gross had a severe mental impairment. Dr. Ray Lemberg, Ph.D., signed this opinion, (Tr. 2166), and separately offered his own opinion. (Tr. 982, 2370). Dr. An Nguyen also

### 2. Dr. El-Harakeh

Dr. El-Harakeh is another treating physician of Ms. Gross. Dr. El-Harakeh opined that Ms. Gross could frequently lift and carry up to five pounds and occasionally bend, squat, crawl, climb, and reach. (Tr. 2317). The ALJ gave the opinion little weight because Dr. El-Harakeh did not treat Ms. Gross until well after the alleged onset of disability, and he treated her for respiratory problems. (Tr. 28).

Ms. Gross did not argue against this determination. She concluded that Dr. El-Harakeh failed to cite clinical findings in support of his opinion, and the ALJ did not err in this regard. (Doc. 24 at 7).

### 3. Dr. Bennett

Dr. Bennett treated Ms. Gross as her chiropractor. He opined that Ms. Gross could occasionally lift and carry up to ten pounds and occasionally bend, squat, crawl, and climb. (Tr. 2272). The ALJ gave the opinion little weight because it was inconsistent with mild clinical findings and improvement from treatment. (Tr. 28).

A chiropractor is not listed as an acceptable medical source in the Federal Regulations, and an ALJ therefore gives chiropractic opinions less weight than an opinion from an acceptable medical source. *See* 20 C.F.R. §§ 404.1502, 404.1513; SSR 06–3p ("The fact that a medical opinion is from an 'acceptable medical source' is a factor that may justify giving that opinion greater weight than an opinion from a medical source who is not an 'acceptable medical source' because ... 'acceptable medical sources' 'are the most qualified health care professionals'"). Further, as discussed above, the ALJ reasonably discredited a medical opinion based on inconsistency with mild clinical findings and improvement from treatment. *Supra* at II.A.1 Therefore, the ALJ did not err to give Dr. Bennett's opinion little weight

### 4. Dr. Lemberg and Dr. Nguyen

Sally Lemberg, a licensed clinical social worker, offered an opinion that Ms. Gross had a severe mental impairment. Dr. Ray Lemberg, Ph.D., signed this opinion, (Tr. 2166), and separately offered his own opinion. (Tr. 982, 2370). Dr. An Nguyen also

examined Ms. Gross and opined that she had an impairment causing mild difficulty to understand complex instructions and interact with others. (Tr. 2004). Although Dr. Nguyen stated that Ms. Gross's mild cognitive difficulties affect her ability to do work-related activities, Dr. Nguyen did not formally opine that Ms. Gross's impairment is totally disabling or inconsistent with her previous work history. *Id.* The ALJ gave little weight to Dr. Lemberg's and Dr. Nguyen's opinions because they were inconsistent with objective medical evidence and with Ms. Gross's lifestyle. (Tr. 20–21). Ms. Gross argued that the ALJ "cherry-picked" evidence to support the conclusion that Ms. Gross does not have a mental impairment. (Doc. 17).

As noted by the ALJ, Ms. Gross underwent a variety of cognitive tests. She performed relatively average on the WAIS-IV and Wechsler Memory tests. (Tr. 981–82, 2001–03). In the May 2014 exam, she scored in the average or low average percentiles of each testable area. (Tr. 2001–03). A separate examining physician conducted a "mini-mental exam" and found that Ms. Gross had normal mental abilities and could remember and discuss current events. (Tr. 2036). As such, the ALJ reasonably interpreted diagnostic test results and a contrary report from an examining physician to discredit Dr. Lemberg's and Dr. Nguyen's conclusions.

The ALJ also discredited the doctors' testimony because it conflicted with Ms. Gross's testimony that she is pleasant and socializes with neighbors and the community. (Tr. 21). Ms. Gross adeptly argues that social integration is not relevant to cognitive impairments. (Doc. 17 at 19). Certainly, persons with cognitive disabilities may also be socially engaged. However, Dr. Nguyen's opinion of disability for Ms. Gross was based on both cognitive and social limitations. Dr. Nguyen stated that Ms. Gross would have mild difficulty interacting with the public and with co-workers and would have mild difficulty responding to work settings. (Tr. 2004). Although Ms. Gross's testimony that she is a "people-person" does not conflict with a cognitive impairment like memory loss or poor comprehension, her personal testimony does conflict with the alleged social limitations. Therefore, the ALJ did not err in this regard.

In light of the whole record, the ALJ made reasonable interpretations of the record to provide clear and convincing reasons for rejecting the medical opinion of Dr. Purush, Dr. Nguyen, and Dr. Lemberg.

### B. The ALJ Justifiably Considered Other Non-treating Physicians

When the ALJ finds the treating physician's opinion to be unreliable, the ALJ considers a number of factors to determine the weight given to another medical opinion. 20 C.F.R. 404.1527. These factors include whether the doctor examined the claimant, whether the medical record corroborates the opinion, and any other legitimate issues brought by the claimant. *Id.* As noted, "[w]hen the evidence before the ALJ is subject to more than one rational interpretation, we must defer to the ALJ's conclusion." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004).

    1.  Dr. Paul Bendheim

Dr. Paul Bendheim reviewed Ms. Gross's medical history and personally examined her. (Tr. 2026–2038). He concluded that Ms. Gross could sit, stand, or walk for two to three hours at a time, (Tr. 2027), frequently lift ten to twenty pounds, (Tr. 2026), and do a number of activities consistent with employment, (Tr. 2031). The ALJ gave the opinion significant weight because it was consistent with the objective medical evidence that Ms. Gross's condition had not deteriorated by November 2011 to the point of disability. (Tr. 26).

This conclusion is reasonable. The ALJ's decision to assign significant weight is supported by the fact that Dr. Bendheim conducted a personal examination of Ms. Gross. Also, the objective medical evidence corroborates Dr. Bendheim's opinion. Dr. Bendheim's opinion of Ms. Gross's limitations is consistent with the 2011 x-rays showing no significant abnormality, (Tr. 427), and is consistent with the 2012 MRI showing "mild multilevel degenerative disc disease" with only minimal deviations. (Tr. 1280). Further, Dr. Bendheim's opinion is consistent with Dr. Purush's repeated prognoses to medicate, exercise, and not do any heavy lifting. (Tr. 1231–76)

Separately, the ALJ specifically noted that Dr. Bendheim's opinion "is consistent

with the claimant's own report that she has had these symptoms for approximately eight years, and has been able to maintain employment at the substantial gainful activity level during that time." (Tr. 26) The ALJ referenced a medical report from January 2012 stating that Ms. Gross had severe back pain for the previous eight years—a period of time that she maintained regular employment. (Tr. 406). Ms. Gross argues that her ability to work prior to the alleged disability is irrelevant.

The ALJ erred because he did not describe this particular aspect of his analysis with significant detail, and previous work history is facially irrelevant to current disabilities. Once it has been determined that an ALJ made an error during the review of a claimant's file, the next step is to determine whether the error was prejudicial. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (applying the harmless error standard after determining that two of the ALJ's reasons supporting his adverse credibility finding were invalid). Ninth Circuit precedents "do not quantify the degree of certainty needed to conclude that an ALJ's error was harmless." *Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015). However, "where the magnitude of an ALJ error is more significant, then the degree of certainty of harmlessness must also be heightened before an error can be determined to be harmless." *Id.*

As discussed above, the ALJ provided other sufficient reasons to credit Dr. Bendheim's testimony. The ALJ's failure to describe a potentially irrelevant factor did not prejudice his conclusion. Therefore, the ALJ reasonably assigned significant weight to Dr. Bendheim's opinion.

2.     Dr. Mary Downs

Dr. Mary Downs reviewed Ms. Gross's record and concluded that Ms. Gross has some psychological impairments that present only minimal restrictions. (Tr. 107–08). The ALJ assigned great weight to her opinion because it was consistent both with Ms. Gross's performance on mental health examinations and also with Ms. Gross's relatively independent and social lifestyle. (Tr. 20).

As previously noted, Ms. Gross performed on average on multiple cognitive tests.

She performed relatively average on the WAIS-IV and Wechsler Memory tests. (Tr. 981–82, 2001–03). In the May 2014 exam, she scored in the average or low average percentiles of each testable area. (Tr. 2001–03). A separate examining physician conducted a "mini-mental exam" and found that Ms. Gross had normal mental abilities and could remember and discuss current events. (Tr. 2036). This is consistent with Dr. Downs' conclusion of some impairment with minimal restrictions.

Also, the ALJ reasonably concluded that Dr. Downs' opinion is consistent with Ms. Gross's daily habits. Ms. Gross claimed that she performs a variety of tasks that require an average cognitive load. She supervises her children and helps manage their daily routine. (Tr. 310). She manages the food and living supplies for her home and can identify and remember what she needs to purchase. (Tr. 312). She cares for cats, and although she does not physically change their litter box, she has the cognitive capacity to maintain a system to regularly purchase their food and kitty litter. (Tr. 310). She has the cognitive ability to manage a to-do list. (Tr. 312). She pays bills, handles a savings account, and uses a checkbook; and although she sometimes forgets things concerning financial management, there is no record that it has significantly impacted her family's life. (Tr. 313). Lastly, she has the cognitive capacity to manage multiple medical appointments. (Tr. 313). To the contrary, Ms. Gross did claim that it is difficult to read and to follow a recipe. (Tr. 314). But notwithstanding some cognitive limitations, the ALJ reasonably determined that Dr. Downs' opinion of some impairment with limited restrictions is consistent with Ms. Gross's cognitive ability to independently manage a family and home.

### C. The ALJ Justifiably Discredited Ms. Gross's Subjective Testimony

An ALJ is not required "to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to [social security regulations]." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). Therefore, an ALJ follows a two-step process to determine the credibility of a claimant's testimony of subjective pain or symptoms. "First, the ALJ must determine whether the claimant has

presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter*, 504 F.3d at 1035–36 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc) (internal quotation marks omitted)). Second, absent evidence of malingering, an ALJ may "reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Id.* at 1281. To determine whether the subjective claims are credible, an ALJ may consider objective medical evidence, prescribed treatments, consistency with daily activities, and other various factors. 20 C.F.R. § 404.1529(c).

The ALJ discredited Ms. Gross's subjective testimony because (1) it conflicted with objective medical evidence; (2) she exaggerated or inconsistently reported symptoms; (3) she received conservative treatment; and (4) the treatment was effective.

1. Objective Medical Evidence

An ALJ may consider lack of objective medical evidence in the credibility analysis, but it cannot form the sole basis for discounting subjective testimony. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005); *Trevizo v. Berryhill*, No. 15-16277, 2017 WL 4053751, at *12, n.10 (9th Cir. Sept. 14, 2017).

For Ms. Gross, the objective evidence does not support disabling symptoms. A set of 2011 x-rays showed no significant abnormality, (Tr. 427), and a 2012 MRI showed "mild multilevel degenerative disc disease" with only minimal deviations. (Tr. 1280). A 2012 brain MRI was generally unremarkable without abnormalities. (Tr. 806). In the May 2014 cognitive diagnosis, she scored in the average or low average percentiles of each testable area. (Tr. 2001–03). Although the medical evidence alone is not conclusive to discredit Ms. Gross's testimony, the ALJ did not err to consider it as part of his evaluation.

Separately, Ms. Gross claims that the ALJ committed a prejudicial, factual error when reviewing her record. She argues that the ALJ erroneously considered an EMG that showed a lack of radiculopathy in her cervical spine, when in reality, the EMG

showed a lack of radiculopathy in her upper extremities. (Doc. 17; Tr. 25). Ms. Gross further argues that a separate EMG confirmed radiculopathy in her spine. (Doc. 17; Tr.1123). But, the ALJ noted that the EMG at issue was "the EMG study of the claimant's upper extremities." (Tr. 25). Further, the ALJ also considered an MRI of the cervical spine that showed stable generative changes, (Tr. 809), and he partly based the limited RFC on this medical condition. (Tr. 26).

2. Exaggerated and Inconsistent Symptoms

An ALJ may consider a tendency to exaggerate or to offer inconsistent statements as part of a credibility assessment. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).

For Ms. Gross, the ALJ considered her testimony that she has flare ups of mental symptoms that last two to four weeks, (Tr. 57–58), yet Ms. Gross did not mention such episodes during a doctor's examination. (Tr. 1998–2005). She also claimed to have had two self-diagnosed strokes, but they were alleviated by a shower, so she did not follow up with her doctor. (Tr. 1999). Separately, during one of her cognitive exams, the doctor thought that Ms. Gross's results might "be reflective of disinterest or decreased effort during the tasks." (Tr. 981). Given these documented experiences, the ALJ reasonably discredited Ms. Gross's testimony for being inconsistent.

3. Lack of More Aggressive Medical Treatment

Conservative treatment may discredit a claimant's testimony of severe pain. *Parra v. Astrue*, 481 F.3d 742, 750–51 (9th Cir. 2007), but the ALJ must also show that additional and more aggressive treatments are available. *See Lapeirre-Gutt v. Astrue*, 382 Fed.Appx. 662, 664 (9th Cir. 2010).

For Ms. Gross, the ALJ cited one doctor's suggestion of "multilevel fusion surgery" as a potential treatment. The same doctor ruled against this treatment due to Ms. Gross's young age and "her overall lack of severe degeneration." (Tr. 24, 409). This decision is bolstered by the fact that doctors regularly reported that conservative treatment alleviated Ms. Gross's symptoms. *See supra* at II.C.4. Accordingly, the ALJ

reasonably discredited Ms. Gross's subjective testimony of disabling symptoms, because he listed an additional and more aggressive treatment which Ms. Gross did not receive due to the lack of severe symptoms.

### 4. Alleviated Symptoms from Conservative Medical Treatment

If a claimant can effectively treat his or her medical condition, then the impairment is not disabling. *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). The operative question is not whether treatment completely resolves the medical condition, but whether treatment alleviates the severity of the symptoms such that the claimant can participate in work activities. *Id.* That is, some medical improvement is irrelevant if the claimant remains incapable of employment. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001).

The ALJ listed numerous examples of medical improvement in Ms. Gross's record. (Tr. 24–25) (citing, e.g., Tr. 509–10, 519, 526–27, 530–31, 930, 1090). He also noted that this improvement led to increased strength and mobility. (Tr. 25, 1027–28). Ms. Gross argues that her extensive and repetitive treatment demonstrates a lack of improvement. If the treatment worked, she would have gone less often and sought less treatment. Further, Ms. Gross argues that she continued to experience disabling pain despite optimistic claims of improvement. (Doc. 17). Notwithstanding an alternative interpretation of the record, given the number of instances when Ms. Gross saw improvement, the ALJ's reasonably discredited Ms. Gross's claims of disabling pain due to the effectiveness of treatment.

Considering these four reasonable bases for discrediting Ms. Gross's subjective testimony, any other potential error in the ALJ's additional analysis is harmless. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (holding that where there is substantial evidence supporting the ALJ's credibility determination, the ALJ's reliance on other invalid reasons is harmless).

/ / /

/ / /

## CONCLUSION

The ALJ did not commit reversible error in denying Gross's application for benefits, and the decision is affirmed.

**IT IS THEREFORE ORDERED** that the ALJ's decision is **AFFIRMED**. The Clerk of Court is directed to terminate this case and enter judgment accordingly.

Dated this 2nd day of November, 2017.

*G. Murray Snow*
Honorable G. Murray Snow
United States District Judge